IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| EMANUEL COLÓN-LÓPEZ, ELIOT COLÓN-RIVERA<br><br>**Plaintiffs,**<br><br>V.<br><br>ARTURO DELIZ-VÉLEZ, AGUSTÍN LOZADA-CARRASQUILLO, ARIET OTERO, DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS OF PUERTO RICO,<br><br>**Defendants.** | CIVIL NO. 23-1595<br><br>VIOLATIONS OF CIVIL RIGHTS<br><br>AND DEMAND FOR JURY TRIAL |

**COMPLAINT**

TO THE HONORABLE COURT:

Comes now, the Plaintiffs through the undersigned attorney and very respectfully STATES, ALLEGES AND PRAYS as follows:

**I. PRELIMINARY STATEMENT**

1. This Complaint is filed on behalf of Plaintiffs Mr. Emanuel Colon-Lopez and his father, Elliot Colon-Rivera, against Defendants Ariet Otero, Arturo Deliz-Velez, Agustín Lozada-Carrasquillo in their individual capacities, and the Puerto Rico Department of Transportation and Public Works, for violations of Plaintiffs' constitutional rights under the Fifth and Fourteenth Amendments to the United States Constitution and relevant statutes. The Plaintiffs, proprietors of a long-standing motor vehicle inspection station, have been subjected to a series of unjust, arbitrary, and unconstitutional actions by the Defendants, who have acted under color of state law.

2. This action seeks redress for the Defendants' egregious violations of the Plaintiffs' procedural and substantive due process rights, as well as for a conspiracy to deprive the Plaintiffs of their constitutional rights.

3. The Plaintiffs have endured an unlawful shutdown of their business, the denial of fair and impartial hearings, and a blatant disregard for their legal rights and the established procedures. The Defendants' actions have not only caused significant financial loss and emotional distress to the Plaintiffs but have also undermined the fundamental principles of justice and fairness that are the cornerstone of the American legal system.

4. Through this Complaint, the Plaintiffs aim to highlight the severity and impact of the Defendants' actions, and to seek just and appropriate remedies for the harm suffered. The Plaintiffs assert that the Defendants' conduct represents a deliberate and coordinated effort to violate their constitutional rights, and as such, warrants a thorough examination and redress by this Court.

5. The Plaintiffs seek injunctive relief, as well as damages, for the violations of their rights as protected under the Constitution and laws of the United States.

## II. JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331 as this action arises under the laws of the United States, specifically 42 U.S.C. §1983 for the violation of Plaintiff's right under the Fifth and Fourteenth Amendments to the U.S. Constitution, and 42 U.S.C. §1985 concerning the conspiracy by Defendants to interfere with Plaintiffs' civil rights.

7. Venue is proper with the District under 28 U.S.C. § 1391(b) as the Plaintiff and Defendants reside, and the events or omissions giving rise to the claims occurred in the District of Puerto Rico.

**III. PARTIES**

8. Plaintiffs Emanuel Colon-Lopez and Eliot Colon-Rivera are residents of Trujillo Alto, Puerto Rico. For the past 24 years, they have operated a motor vehicle inspection station in Rio Piedras, Puerto Rico, serving the community with dedication and professionalism. This establishment remained in continuous operation until it was illegally shut down by the Defendants in May 2023.

9. Defendant Agustin Lozada-Carrasquillo is a resident of Puerto Rico. At all times mentioned herein until May 2023, he served as the Director of the Office of Investigations and Inspections at the Department of Transportation and Public Works of Puerto Rico. He is sued in his individual capacity.

10. Defendant Arturo Deliz-Velez is also a resident of Puerto Rico. He previously served in a subordinate capacity to Mr. Lozada-Carrasquillo at the Department of Transportation and Public Works of Puerto Rico. Following Mr. Lozada-Carrasquillo's departure in May 2023, Mr. Deliz-Velez assumed the position of Director of the Office of Investigations and Inspections and has retained this role up to the present date. He is sued in his individual capacity.

11. Defendant Ariet Otero is a resident of Puerto Rico and, at all times mentioned herein, was an employee at the Department of Transportation and Public Works of Puerto Rico. She is being sued in her individual capacity.

12. Defendant Department of Transportation and Public Works of Puerto Rico (the "Department" or "DTOP") is a governmental department of the Commonwealth. The Department, through its Department Secretary, is responsible for the administrative oversight and implementation of policies, including those related to the operations of motor vehicle inspection stations.

## IV. FACTUAL ALLEGATIONS

13. Mr. Colon-Lopez and his father, Mr. Colon-Rivera, have operated a motor vehicle inspection station continuously and in the same location since the year 1999.

14. Since the inception of their operations in 1999, the Plaintiffs have consistently and uninterrupted obtained and held the required license to operate their Motor Vehicle Inspection Center.

15. The operation of the vehicle inspection station has been essential for the livelihood of the Plaintiff and his parents. For years, this station has been the primary source of income for Plaintiffs' family that has allowed them to meet their basic needs.

16. A motor vehicle inspection station is an operation established under the Puerto Rico Motor Vehicles and Traffic Act[1] (hereinafter, the "Motor Vehicles Act") to conduct mandatory inspections of vehicles to ensure compliance with safety and emissions standards.

17. Article 12.05(d)[2] of The Motor Vehicles Act establishes that "[t]he **Secretary [of the Department of Transportation and Public Works] may revoke** the authorization granted to operate an inspection station, **upon prior notice and an administrative hearing** at any time that, in his/her judgment, said station fails to meet the necessary conditions to perform said inspections adequately". Emphasis provided.

18. However, in 2009 the Puerto Rico Permit Process Reform[3] (hereinafter, "Permit Reform Act") was passed into law.

19. Article 2.5[4] of the Permit Reform Act stripped all agencies and departments of the local government of their authority to evaluate, approve, or deny any final

---

[1] Act 22-2000, 9 L.P.R.A. §§ 5351-5359.
[2] Id. at §5355.
[3] Act 161-2009, 23 L.P.R.A. §§ 9011, et al.,
[4] Id. at §9012d.

4

determinations, permits, and transactions that influence the operation of businesses in Puerto Rico. This authority, **including the issuing of permits and licenses to operate a motor vehicle inspection station in Puerto Rico**[5], was centralized and transferred to the Permit Management Office (OGPe by its acronym in Spanish).

20. In compliance with the Permit Reform Act, the Plaintiffs acquired their permit to operate their vehicle inspection station from the Permit Management Office for the fiscal year 2023-2024 and previous years.

21. On or about May 23, 2023, Mr. Emanuel Colon-Lopez visited the DTOP facilities in Carolina with the intent of procuring the requisite registration stickers and

---

[5] The Joint Regulation 2020 (Reglamento Conjunto 2020) was approved by OPGe pursuant to the Permit Reform Act. Chapter 4.8 of the Joint Regulation pertains to the vehicle inspection station.
CHAPTER 4.8 LICENSE FOR OFFICIAL VEHICLE INSPECTION STATION AND LICENSE FOR OFFICIAL INSPECTION STATION AUTHORIZED TO CHARGE RENEWAL FEES AND PREMIUM

RULE 4.8.1 GENERAL PROVISIONS
a. Anyone interested in operating an official vehicle inspection station or an official inspection station authorized to charge renewal fees and the premium, and for the issuance of any of the official certificates on such inspection and the proper mechanical condition of the inspected vehicles must obtain the corresponding license.
b. Under Law 245-2014, which amends Law 253-1995, the Mandatory Motor Vehicle Liability Insurance Law, it is ordered that in those Official Inspection Stations authorized to charge renewal fees and to deliver the corresponding sticker, the premium for Mandatory Liability Insurance is charged to those who do not have a Compliance Certificate. The Selection Form approved by the Insurance Commissioner's Office will be used for this purpose.
c. **The Certificate for Official Vehicle Inspection Station or the Certificate for Official Inspection Station Authorized to Charge Renewal Fees and Premium will be part of or attached to a single permit.**
d. Applications to establish inspection stations from companies dedicated to buying and selling motor vehicles, agencies, entities dedicated to leasing motor vehicles, and scrap buying and selling businesses will not be considered. Nor from their agents, employees, or relatives within the fourth degree of consanguinity or second degree of affinity.
e. The License for Official Vehicle Inspection Station and the License for Official Inspection Station Authorized to Charge Renewal Fees and Premium will only be valid for the station.
f. The facilities of the inspection station may not be used to make repairs, corrections, or other activities other than the inspection or re-inspection of a motor vehicle.
g. New official motor vehicle inspection stations will not be authorized in areas identified as floodable on official maps. Our translation.

certificates of inspections for the continued operation of their motor vehicle inspection station.

22. Despite holding a valid permit from OGPe, in May 2023, Defendants Deliz-Velez, Lozada-Carrasquillo, and Ariet Otero refused, under the color of law, to issue necessary registration stickers (known as "marbetes") and certificates of inspections to the Plaintiffs, citing baseless deficiencies and without providing any formal notice or documentation of such decision.

23. Defendants, in a clear display of their intent to oppress and cause harm to the Plaintiffs, compelled them to pay a substantial fine of $5,000.00.

24. Relying in good faith on the representations made by the Defendants, the Plaintiffs dutifully complied and paid the demanded amount.

25. However, in a flagrant breach of trust and duty, the Defendants, after receiving the payment, continued their unjustifiable refusal to issue the necessary certificates for the operation of the Plaintiffs' vehicle inspection center.

26. This act not only represents a gross misuse of authority but also highlights the Defendants' deliberate and malicious intent to suppress the Plaintiffs' legitimate business operations, causing them significant financial and emotional distress.

27. Their refusal to issue the inspection certificates and "marbetes" effectively and illegally shuttered the Plaintiffs' inspection station, depriving them of their lawful business and means of sustenance.

28. To add insult to the injury, Defendants failed to provide Plaintiffs with any formal notice or documentation supporting the Department's purported decision.

29. Prior to the denial of the Defendants to issue the registration stickers and certificates, Plaintiff Colon-Lopez visited the Department's premises to file some documents as part of the regular bureaucratic paperwork corresponding to the year

2022-2023 when Defendant Ariet Otero attempted to extort Mr. Colon-Lopez by demanding a bribe for the processing of documents, an overt act of coercion that the Plaintiffs did not comply with.

30. In response to the unlawful closure, on or about June 19, 2023, Plaintiff Colon-Lopez returned to the Department's offices in Carolina seeking a formal explanation and demanding from Defendant Deliz-Velez that an official notification be provided, detailing the Department's purported determination.

31. On June 21, 2023, (30 days after illegally shutting down Plaintiffs' place of business) the Defendant Lozada-Carrasquillo provided Plaintiffs with a notification letter, under his signature, purportedly "denying the permit." This action was taken despite the fact that the authority to issue, deny or revoke such permits rests solely with OGPe, and the Plaintiff's existing valid permit from such agency.

32. Defendants did not provide Plaintiffs with an opportunity to object before the closure of the inspection station.

33. The contradictory and convoluted actions taken by the Defendants demonstrate an arbitrary and capricious disregard for the rule of law and established procedures. Their actions starkly counter the concept of ordered liberty, and they present it as not only shocking but also in violation of universal standards of liberty, justice, and fair play.

34. Before the applicability of the Permit Reform Act, the legal framework that provided the Secretary of DTOP to evaluate, approve or deny permits to operate the vehicle inspection stations was the Puerto Rico Motor Vehicles and Traffic Act.

35. Pursuant to the Puerto Rico Motor Vehicles and Traffic Act, DTOP Regulation No. 6271[6] implemented the powers of its Secretary regarding the operations of vehicle inspections stations including the authority to suspend or revoke the permits to operate the stations.

36. Article XI (B) of Regulation No. 6271 authorized the Secretary of DTOP to revoke the permit of an inspection station **only when it provided prior notice and an administrative hearing** (pre-deprivation hearing)[7].

37. It is critical to denote that the defendants, namely Deliz-Velez, Lozada-Carrasquillo, and Mrs. Otero, do not hold the position of the Secretary of the Department, nor have they been granted any formal delegation of authority to wield the powers vested in the Secretary's office. This absence of official capacity or delegated authorization fundamentally undermines the legality of their actions in this matter.

38. Furthermore, even if the Defendants were to claim some form of delegated authority from the Secretary of the Department, such a delegation would be rendered moot and without legal basis under the Puerto Rico Permit Process Reform Act of 2009. This Act explicitly removed the power to evaluate, grant, or deny permits and licenses, including those necessary for the operation of vehicle inspection stations, from the Secretary and all other local government agencies and departments, centralizing this authority within the Permit Management Office (OGPe).

---

[6] "Reglamento para Reglamentar la Inspección de Vehículos de Motor", Regulation No. 6271 (2001).

[7] B. REVOCATION (1)The Secretary may revoke, after notification and administrative hearing, the authorization to operate the inspection station if the said business no longer meets the conditions and requirements necessary to properly conduct the inspections.
(2)The Secretary may revoke the authorization granted to operate an inspection station or a certificate that has been issued to an inspection mechanic if, after the administrative hearing, the charges that led to the suspension are confirmed. (Our translation).

39. As such, any attempt by the Defendants to revoke the Plaintiffs' permits and licenses, or to prevent the operation of their vehicle inspection station, lacks legal standing and violates the clear legislative mandate of the Permit Reform Act.

40. Despite the evident absence of authority as outlined in the Permit's Reform Act, the Motor Vehicle and Transportation Act, and DTOP Regulation 6271, Defendants Deliz-Velez, Lozada-Carrasquillo and Ariet Otero, while acting under the apparent authority of the law, egregiously infringed upon the Plaintiff's constitutional rights.

41. This infringement occurred through the unauthorized shutdown of the inspection station; a decision made without affording Plaintiffs the fundamental right to pre-deprivation due process as mandated by law and regulations.

42. On July 6, 2023, the Plaintiffs, through their legal representation, formally communicated with Defendant Velez-Deliz, outlining the violation of pre-deprivation due process rights and requested the scheduling of a post-deprivation hearing to address this serious breach.

43. In a continuation of their strategy to prolong the deprivation and violation of the Plaintiffs' constitutional rights, Defendant Arturo Deliz, in his capacity within the DTOP, strategically assigned an examining officer of his trust.

44. The motive behind this appointment was evidently to unnecessarily prolong the post-deprivation hearing, further exacerbating the harm inflicted upon the Plaintiffs.

45. Throughout the administrative proceedings concerning the Plaintiffs, Defendant Arturo Deliz's conduct and interactions with the examining officer have raised serious concerns of procedural impropriety and bias[8].

- [8]On July 20, 2023, the examining officer issued an "interlocutory resolution" in his capacity as an official examiner. This resolution set a pre-hearing conference for July 31, 2023, at 8:00 a.m., ostensibly to discuss the matters raised by the Plaintiffs.

9

46. Engaging in ex-parte communications with the examining officer, defendant Deliz's unexplained absences at scheduled hearings without formal notification, and the examining officer's apparent awareness and tacit acceptance of Mr. Deliz's whereabouts demonstrate a clear departure from standard administrative norms and due process.

- On the scheduled date, July 31, 2023, the Plaintiffs, and their legal counsel were present at the conference venue. However, neither Defendant Deliz-Velez nor any representative from the Department attended, nor did they provide any notice or explanation for their absence, contravening standard procedural rules.
- In an irregular move, the examining officer and Deliz-Velez engaged in ex-parte communication to inform of the latter's absence, bypassing the basic rule of any adjudicative proceeding of informing any absence to a hearing by written motion and notifying the opposing party.
- On August 24, 2023, the Plaintiffs and their counsel once again appeared for a rescheduled conference. However, in a repeated display of disregard, neither Deliz-Velez nor any Department's representative made an appearance, nor did they provide prior notification of their absence to the Plaintiffs.
- Despite the absence of official communication to the Plaintiffs, the examining officer continued to engage in ex-parte discussions with Deliz-Velez, being informed of and excusing his absence, while the Plaintiffs and their counsel were left uninformed and their requests for a fair hearing unheeded.
- Continuing this pattern, on August 29, 2023, the examining officer issued a third "Interlocutory Resolution," rescheduling the administrative hearing yet again, this time for September 20, 2023.
- On the rescheduled date, September 20, 2023, the Plaintiffs were present, and, prior to the commencement of the hearing, their counsel engaged in discussions with Defendant Deliz-Velez. An agreement was reached, under which the Plaintiffs would resume operation of their vehicle inspection station upon the signing of a mutually agreed-upon document and the corresponding resolution by the examining officer.
- During the hearing, the examining officer recorded on the official record that the resolution to permit the Plaintiffs to recommence operations would be issued promptly once the agreement was formalized and submitted to him.
- On September 21, 2023, following the hearing, the Plaintiffs promptly submitted the proposed agreement to Defendant Deliz-Velez.
- In a display of ongoing evasion, Deliz-Velez did not respond to this submission. Consequently, on October 5, 2023, the Plaintiffs filed an urgent motion to inform the examining officer that, despite their efforts and prompt submission of the proposed agreement, no response had been forthcoming from Defendant Deliz-Velez.
- To the Plaintiffs' dismay, it was discovered that subordinates of defendant Deliz-Nievez had intentionally withheld the proposed agreement submitted on September 21 and the urgent motion of October 5, 2023, thereby preventing the examining officer from having to make a ruling on the matter.

10

47. Additionally, the DTOP's withholding of motions filed by the Plaintiffs[9] further exemplifies the systemic obstruction faced by the Plaintiffs.

48. The examining officer's reluctance to enforce standard procedural requirements on defendant Deliz-Velez, coupled with the repeated postponement of hearings due to his absences, reflects a troubling pattern of delay and evasion.

49. This sequence of events not only undermined the integrity of the administrative process but also suggests a concerted effort to prolong the legal battle, thereby exacerbating the Plaintiffs' distress and impeding their right to a fair and timely hearing.

50. In a final affront, on or about October 25, 2023, Plaintiff Colon-Lopez visited the Department offices in Carolina to inquire about the status of his case and the paperwork previously submitted. During this visit, he shockingly discovered that the documents he had entrusted to Defendant Ariet Otero back in May 2023, amidst Otero's attempts to extort a bribe for their processing, had not been filed in the system.

51. This revelation not only exposed Otero's earlier bribery effort as a further ploy in the Defendants' pattern of deceit but also highlighted the systemic obstruction and malfeasance perpetuated by the Defendants, undermining the integrity of the entire legal process, and blatantly disregarding the rights of the Plaintiffs.

52. Despite the post-deprivation hearing being a mere formality, devoid of substance and fairness, the capricious and arbitrary actions of the Defendants forced the examining officer and the Department's Secretary to order the immediate opening of the Plaintiffs' inspection station on a resolution dated November 17, 2023 (approximately 180 days since the illegal shut down).

---

[9] According to DTOP's personnel subordinate to Defendant Arturo Deliz, all motions and documents in the administrative case filed by Claimants (Plaintiffs in this case) must be sent to them and they would forward it to the examining officer.

53. This resolution was a long-awaited acknowledgment of the Plaintiffs' rights, intended to rectify the months of unwarranted closure and the consequent hardships faced by the Plaintiffs.

54. Notwithstanding the clear order of the resolution to immediately open, signed not only by the examining officer, but also by the Secretary of the Department, the Defendants continued their pattern of obstruction.

55. Despite the unequivocal directive from the highest authority within the Department, Plaintiffs found themselves in a surreal stalemate, as the Defendants, led by Mr. Deliz-Velez, obstinately refused to comply.

56. This continued defiance not only flouted the explicit orders of their superiors but also further entrenched the violation of the Plaintiffs' constitutional rights.

57. Plaintiffs' repeated visits and requests for the implementation of the resolution were met with evasion and delay, exemplifying a blatant disregard for the legal process.

58. The Department, its Secretary and other policy officials showed deliberate indifference by failing to update the Department's regulations, policies, and procedures in line with the new legal framework established by the Permit's Reform Act.

59. This failure to adapt to the new legal requirements facilitated or contributed to the unlawful actions taken by the defendants.

60. The Department failed to train its employees and officers in the new permit legal framework, as established by the Permit's Reform Act, contributing to the violation of the Plaintiffs' rights.

61. This lack of training indicates a neglect in ensuring that the actions of the Department's employees are in compliance with current legal standards.

62. The Defendants, namely Deliz-Velez, Lozada-Carrasquillo and Ariet Otero took actions that were specifically vested in the Secretary by statute. This overreach of

authority by individuals not legally empowered to make such decisions is indicative of the customs and flawed operational culture within the Department, contributing to the alleged violations.

63. The Secretary, by virtue of their office and oversight responsibilities, was or should have been aware that allowing the same personnel to conduct inspections and also to possess the authority to revoke and deny permits, created an inherently biased and flawed administrative process that was susceptible to abuse.

64. This concentration of power in the same individuals not only compromised the integrity of the inspection and permit process but also made it highly foreseeable that such officials could arbitrarily or capriciously deprive Plaintiffs of their property interests in their business operations without due process as guaranteed by the Fifth and Fourteenth Amendments.

65. Therefore, it was foreseeable that the dual role of personnel in both inspecting and revoking permits without separate oversight or a threshold determination of compliance by an independent adjudicatory body would lead to wrongful deprivation of the Plaintiffs' rights and property.

66. The Secretary's failure to establish a separate and impartial adjudicatory process, or to implement checks and balances within the Department of Transportation and Public Works, was a breach of their duty to protect the Plaintiffs' civil rights, leading to a predictable and actual deprivation of the Plaintiffs' constitutionally protected interests.

## V. CAUSES OF ACTION

### Count I
### Violation of Plaintiffs' Procedural Due Process Rights
### Under the 14th Amendment to the U.S. Constitution

67. Plaintiffs realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

68. The Defendants' actions have egregiously violated the procedural due process rights of the Plaintiffs as enshrined under the 14th Amendment by their refusal to provide a pre-deprivation hearing, a requirement explicitly stipulated in Department's Regulation 6271. This regulation, a binding legal framework, mandates that a hearing be conducted prior to the revocation of any operational permits.

69. By sidestepping this crucial process, the Defendants have not only acted in contravention of their own regulations but have also denied the Plaintiffs their lawful right to defend and retain their property interest in their business. The omission of this critical procedural step, which forms the bedrock of fair administrative practice, constitutes a direct and unabashed infringement on the Plaintiffs' right to due process.

70. In addition to the aforementioned violations, the Defendants' handling of post-deprivation procedures further underscores their disregard for the Plaintiffs' procedural due process rights.

71. After the unjust closure of the Plaintiffs' business, the post-deprivation processes offered, if any, were woefully inadequate and failed to provide a prompt opportunity for redress.

72. The Defendants' consistent failure to respond to the Plaintiffs' submissions, their refusal to process the negotiated agreement, and the repeated cancellation or non-attendance at scheduled hearings reflect a systemic deficiency in the post-deprivation procedures.

73. These actions deprived the Plaintiffs of their right to a timely and effective remedy, further compounding the violation of their procedural due process rights.

74. The lack of a fair, prompt and functional pre-deprivation and post-derpivation process not only left the Plaintiffs without a recourse to challenge the closure of their

business but also exemplified the Defendants' complete disregard for the principles of due process enshrined in the Constitution.

## Count II
### Violation of Plaintiffs' Substantive Due Process Rights
### Under the 5th and 14th Amendments to the U.S. Constitution

75. Plaintiffs realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

76. The actions of the Defendants in this matter not only constitute a sham legal process but also represent a blatant violation of the Plaintiffs' substantive due process rights as safeguarded under the 5th Amendment and 14th Amendment. This violation is particularly egregious due to the Defendants acting clearly outside their legal frameworks and exercising authorities that have not been delegated to them.

77. By taking such actions, the Defendants have not only breached the regulatory statutes they are bound to uphold, but they have also engaged in conduct that fundamentally undermines the rule of law.

78. Their unauthorized and arbitrary decisions, including the unwarranted closure of the Plaintiffs' business and refusal to process necessary documentation, are reflective of a deliberate subversion of legal processes and a disdain for the established legal order.

79. This disregard for legal boundaries is a stark affront to the substantive due process rights of the Plaintiffs, as it strips them of their rightful protections of property and remedies under the law.

80. Moreover, the Defendants' actions exhibit a level of callousness and a shocking disregard for justice that violate the principles of substantive due process. Their conduct, characterized by the orchestration of a sham legal process and the exploitation of their official positions to oppress and delay the Plaintiffs' legal recourse, is not merely

improper but shocks the conscience. It stands in stark violation of universal standards of justice and decency.

81. This is evident in their disregard for the mandate of pre-deprivation hearings, the manipulation of post-deprivation administrative procedures, and the attempts at extortion by Defendant Ariet Otero. Such behavior not only demonstrates a gross abuse of power but also a contemptuous attitude towards the rights and dignity of the Plaintiffs.

82. Finally, the Secretary's failure to separate the investigative and adjudicative functions within the Department of Transportation and Public Works facilitated Defendants concerted actions and amounted to a foreseeable and actual violation of their due process rights under the Fifth and Fourteenth Amendments.

## Count III
## Conspiracy to Interfere with Plaintiffs' Constitutional Rights – 42 U.S.C. §1985.

83. Plaintiffs assert a conspiracy among Defendants Ariet Otero, Deliz-Velez, and Lozada-Carrasquillo to interfere with their constitutional rights.

84. The pattern of conduct exhibited by these Defendants, as delineated in the preceding facts, points to a coordinated effort to undermine the Plaintiffs' rights to property and due process under the Constitution of the United States.

85. This includes Otero's attempted extortion, which forms part of a larger scheme of manipulation and abuse of power, and Deliz-Velez's and Lozada-Carrasquillo arbitrary refusal to adhere to administrative proceedings, hindering the Plaintiffs' business operations.

86. Also, their deliberate refusal to comply with the examining officer and Secretary's resolution further exemplifies a collective endeavor to obstruct the Plaintiffs' access to due process and equal protection under the law.

87. Such collaborative actions, which extend beyond mere negligence or mismanagement, suggest a deliberate and concerted effort to deny the Plaintiffs the rights and protections afforded to them by the Constitution.

88. The conduct of these Defendants, when viewed collectively, reveals a clear and intentional strategy to subvert the Plaintiffs' constitutional rights.

89. The actions of Defendant Ariet Otero, in coercing and threatening the Plaintiffs, combined with the subsequent actions of Defendants Deliz-Velez, and Lozada-Carrasquillo, illustrate a pattern of behavior that is not only individually damaging but also collectively orchestrated.

90. The consistent disregard for legal norms, the manipulation of administrative processes, and the blatant abuse of power by these Defendants all point to a conspiracy to deprive the Plaintiffs of their constitutional rights.

91. The Secretary's failure to separate the investigative and adjudicative functions within the Office of Inspection and Investigation, formerly led by defendant Lozada-Carrasquillo, and now by defendant Deliz-Velez, facilitated Defendants' conspiracy.

92. This conspiracy has resulted in significant harm to the Plaintiffs, including the loss of their livelihood, emotional distress, and the erosion of their trust in the legal and administrative systems that are meant to protect their rights.

**Whereof,** Plaintiffs respectfully request relief as follows:

a) Monetary damages in the amount of $200,000.00 for the financial losses incurred due to the Defendants' actions.

b) Compensatory damages in the amount of $250,000.00 for the emotional and psychological distress caused by the Defendants.

    c) Punitive damages in the amount of $200,000.00, as the Defendants' conduct is shown to be motivated by evil motive or intent, or demonstrates reckless or callous indifference to the federally protected rights of the Plaintiffs.

    d) A preliminary and permanent injunction ordering Defendant Department of Transportation and Public Works to dispense the necessary registration stickers (marbetes) and certificates of inspections, thereby allowing the Plaintiffs to resume their motor vehicle inspection operations;

    e) Reasonable attorney's fees and costs;

    f) Such other and further relief as the Court may consider just and appropriate.

**Plaintiffs hereby demand a jury trial.**


In San Juan, Puerto Rico, on this date of November 30, 2023.

**Respectfully Submitted**


s// *Joel A. Ayala Hernández*
**JOEL A. AYALA HERNÁNDEZ**
US DC No. 307004
PO Box 538
Bayamon, PR 00960-0538
Tel.:(939)383-1880
Email: ja@ayalahernandez.com